GARRATT (SIEBERT v.). See Case No. 12,845.

## Case No. 5,248.

### GARRETSON v. CLARK et al.

[15 Blatchf. 70; 3 Ban. & A. 352; 14 O. G. 485.][1]

Circuit Court, N. D. New York. July 15, 1878.[2]

PATENTS—ACCOUNTING FOR PROFITS—APPORTIONMENT BETWEEN PATENTED AND UNPATENTED FEATURES—COSTS.

1. In a suit in equity on two letters patent, each for an "improved mop-head," an interlocutory decree for profits and damages was made. The plaintiff, before the master, put in

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge; reprinted in 3 Ban. & A. 352; and here republished by permission.]
[2] [Affirmed in 111 U. S. 120, 4 Sup. Ct. 291.]

no evidence, except evidence to show the damages to the plaintiff and the profits to the defendant, in the manufacture of the infringing mop as a whole. At the close of the plaintiff's evidence, the defendant moved to dismiss the proceedings, on the ground that no basis had been laid before the master to compute or estimate the plaintiff's damages, and that he was entitled to only nominal damages. The point was reserved and the defendant put in evidence on the basis assumed by the plaintiff. The master reported, that, as no evidence had been given before him of damages resulting to the plaintiff, or of profits accruing to the defendant, from making and selling the patented improvements as distinguished from the whole mop, he found for the plaintiff nominal damages only: *Held*, that the master's report was correct.

[Cited in Schillinger v. Gunther, Case No. 12,-457; Star Salt Caster Co., Id. 13,320.]

2. The patentee must, in every case, give evidence tending to separate or apportion the defendant's profits and the patentee's damages, between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.

[Cited in Calkins v. Bertrand, 8 Fed. 759; Zane v. Peck, 13 Fed. 476; Maier v. Brown, 17 Fed. 737; Atlantic Milling Co. v. Rowland, 27 Fed. 25.]

[See note at end of case.]

3. Exceptions by the plaintiff to the master's report, founded on the admission of testimony objected to, *held* to be immaterial, because, the plaintiff having failed to give adequate evidence as to profits and damages, the defendants were not put on their defence in that respect, and it was unimportant whether they gave competent evidence or no evidence.

4. Certain exceptions overruled, as too general.

5. The plaintiff not allowed to give further evidence, there being no claim of a failure, through inadvertence, to give other or further evidence, or that there was any which could be given.

6. Costs awarded to the plaintiff, except the costs of the reference, and report, and exceptions, and the hearing thereon.

[Cited in Everest v. Buffalo Lubricating Oil Co., 31 Fed. 743.]

[This was a bill in equity by Oliver S. Garretson against Charles B. Clark and others for the alleged infringement of certain patents.]

James A. Allen, for plaintiff.
Francis A. Macomber, for defendants.

BLATCHFORD, Circuit Judge. The bill in this case is founded on two patents. One of them [No. 54,860] was granted to Charles B. Clark and Oliver S. Garretson, May 22d, 1866, for an "improved mop-head." The specification states that the invention consists (1) "in the combination of a collar provided with wings, or their equivalent, which carry the movable jaw, and an adjusting nut with which it is connected by means of a flange and lugs, with a threaded shank and fixed cross-head;" and (2) "in the manner of connecting the wire-frame, which constitutes

the movable jaw, with the arms of the collar." The patent has two claims: "(1) Connecting the nut with the collar which carries the movable jaw, by means of the lugs, or their equivalents, in combination with the threaded shank of the fixed jaw, arranged and operating substantially as set forth. (2) Connecting the movable jaw with the collar by means of the bows, constructed and operating substantially in the manner and for the purposes specified." The other patent [No. 67,643] was granted to Oliver S. Garretson, August 13th, 1867, for an "improved mop-head." The specification states that the invention consists "in constructing that part of the loose jaw that forms the collar in two parts or halves, with the inner surfaces properly grooved to receive and retain the flange or wings of the nut, and to allow it to have a free rotary motion, by which means the parts, with the recesses and rivet-holes, may be cast complete, requiring no drilling or reaming in putting together." The claim is: "Making the collar of the loose jaw in two parts, so that the nut may be placed between them, and, when connected together, the collar surrounds the nut and retains it in position, for the purpose above set forth."

In April, 1875, on final hearing on pleadings and proofs, an interlocutory decree was entered, finding that the defendants had infringed the first claim of the patent of 1866, and the whole claim of the patent of 1867, and decreeing that the plaintiff "recover of the defendants the profits made and received by the defendants, and the damages, if any, over and beyond the amount of such gains and profits, suffered by the complainant, by reason of the infringement and violation of the rights of the complainant, which it is adjudged have been so committed by the defendants," and referring it to a master, George J. Sicard, Esquire, to take proofs of, and to compute the amount of, the said profits and damages, and report the same to the court, and awarding a perpetual injunction against the defendants. The master has filed his report, by which he finds that the plaintiff has not offered before him evidence of the damage suffered by the plaintiff, or of profits realized by the defendants, by reason of the infringement and violation by the defendants of the rights of the plaintiff in the inventions and improvements referred to in the decree, and that the plaintiff is entitled, under said decree, to nominal damages only against the defendants. The master has stated at length his reasons for his finding. He proceeds upon the view that it is settled law, that, when a patent is for an improvement of a machine, the plaintiff can recover only such damages as are occasioned by the use of the improvement, and the inquiry is as to what profit the defendant acquired by the use of the improvement alone, and not by the manufacture of the whole machine. The master states, and the record shows, that all the evidence offered by the plaintiff, has been

with the view of showing the damages to him and the profits to the defendants, in the manufacture of the infringing mop as a whole. At the close of the evidence given before the master on the part of the plaintiff, the defendants moved to dismiss the proceedings, on the ground that no basis had been laid for the master to compute or estimate the plaintiff's damages, and that consequently the plaintiff was entitled to only nominal damages. The point was reserved, and the defendants put in evidence on the basis assumed by the plaintiff. The master says: "There has been no evidence before me that would warrant a finding that the whole success of the mops in question, either of the defendants' or of the complainant's manufacture, was due to the peculiar construction described in the claims of the patents above referred to. Nor could I find, from the evidence, that that peculiar construction constituted the sole feature that made the mops a success in the market. Such finding would be required to sustain the complainant's theory of damages. The evidence showed that Garretson had invented and patented an improvement in mops; that the mops made by him and embodying the improvement were successfully introduced into the market; that, after the manufacture and introduction by the defendants of the infringing article, the trade of the complainant had decreased; and there was much documentary and other evidence produced to show the amount of the cost and of the sales by both parties. All this testimony was given on the theory, which is the complainant's position in this case, as I understand it, that the claims infringed are indispensable to the success of the mop and form the only and vital part and principle of its operation. In other words, it is claimed that this mode of construction, connection and operation of the collar and loose jaw, is all there is, practically speaking, of the mop. By the patents themselves, and the claims thereof, it is clear that the complainant's invention is not of a machine, but of an improvement. He has taken the mop, an instrument in use from time immemorial, and claims that, by the introduction of a new mode of constructing and operating it in one of its parts, he has added to it all that is valuable in it. The complainant has given before me no evidence aimed at the separation of the damages, or the apportionment of a certain proportion of the defendants' profits in manufacturing mops as belonging to the peculiar features which are the complainant's invention, and which the defendants have wrongfully adopted and incorporated into the instrument made and sold by them. He rests all his evidence on the proposition, that his invention covers the whole ground and lends to the article manufactured by the defendants all its value. I cannot agree to that view, upon the evidence submitted. The complainant's invention has peculiar and distinctive features in the form of construction and operation referred to, but these features alone do not constitute a mop, and there were many valuable mops in the market before these features were at all introduced. The evidence shows many such mops as made in the past, and even as made in the present, for the defendants appear to be now selling with success a mop not claimed to infringe the complainant's invention. The complainant has given no testimony before me to satisfy my mind that the sole salability of the mops in question arose from their possessing the features I have referred to as embodied in the complainant's invention. These features are the form of the construction of the collar in two pieces, the mode of connecting the collar and the nut, the presence of flanges on the latter, and its enclosure within the circuit of the former. The nut, the collar, the wire-binder, the cross-head fixed and riveted to the handle, the grooving of such cross-head, the notching of its ends to steady and guide the wire-binder, the threaded shank, the connection and securing of the wire-binder to the collar—all these are independent of the plaintiff's improvement, and most of them are old in the history of the invention. Yet, they contribute to the successful operation of the mop, and are found in the mops of the complainant as well as those made by the defendants. Combinations of these various elements of invention, in different forms, are found in most, if not all, of the exhibits in the case. Some of these elements are common to all the successful mops spoken of by the witnesses, and may be considered as quite indispensable to the construction and practical operation and salability of the instrument. I cannot believe that none of them contributes any value to the mops in question. As these elements and combination exist in the mop made and sold by the defendants, and adjudged to be an infringement, the finding of more than nominal damages for the complainant would, on the complainant's theory, involve the proposition that there is not, among all of these elements or combinations, any one that involves a principle of sufficient practical use to add to the salability or actual value of the machine. I believe, on the contrary, that all of these elements have combined to make the mops in question successful, and it is too much to say that no proportion of the trade diverted from the complainant by the defendants, or of the profits they realized from the sale of their mop, was due to the presence of some one or more of them. At least, while so many elements of success are present in the instrument, I would not be warranted in finding that its entire success was due to its embodiment of the complainant's invention, unless direct evidence on that subject were furnished. As no evidence has been given before me of damages resulting to the complainant, or of profits accruing to the defendants, from the manufacture and sale of the improvement of the complainant, as distin-

guished from the machine itself, I find for the complainant nominal damages only." The plaintiff has excepted to the master's report. The exceptions insist that the actual damages to the plaintiff, for the mops made and sold by the defendants in infringement, which the plaintiff would have made and sold but for the infringing manufacture and sale by the defendants, are the difference between what the manufacture and sale of such mops would have cost the plaintiff, and the amount for which the plaintiff would have sold such mops; and that the amount of the profits made and received by the defendants, by reason of the infringement adjudged, is the difference between what the manufacture and sale of the infringing mops made and sold by the defendants cost the defendants, and the amount for which the defendants sold said infringing mops.

There is, thus, a pointed antagonism between the views of the master and those contended for by the plaintiff. I have cited, thus, fully, the text of the master's views, because it would be difficult to express, in more apt words, the considerations properly applicable to the determination of the questions involved in this case. They may be amplified and illustrated, but the master has expressed, with clearness and force, the true principles which, on the evidence before him, apply to this case.

The argument on the part of the plaintiff is, that, at the time the defendants began to infringe, the plaintiff's mop and the mop of one Taylor held a monopoly of the market, and were not competed with seriously by other mops, or to an extent which interfered with an arrangement which had been made between the proprietors of the patents covering the plaintiff's mop and the proprietors of the patent covering the Taylor mop, whereby the price of those two mops was maintained at $2 a dozen, affording a profit of at least $1 a dozen; that the defendants sold the infringing mop at $1.75 a dozen; that the plaintiff had an establishment at which he could have made mops enough to fill all ordinary orders for mops; that his mop was known and his trade was established; that the effect of the infringement was to cause a large falling off in the plaintiff's sales; that it was the taking, without right, of the plaintiff's patented improvements, which enabled the defendants to enter the mop market, because the plaintiff's mop and the Taylor mop had substantially driven out of the market all other mops, by making it impossible to sell such other mops at a profit; that, while it is generally true that the patentee of an improvement in an article is not entitled to the profits on the sale of the whole article, the rule is otherwise when, as a matter of fact, the improvement so dominates and controls the article in the market held as an exclusive monopoly by the patentee, that the only way in which the article can be sold at all at a profit, is through the sale of it with the patented improvement; that the advantage which the defendants gained was a market for mops at a large profit, when there was no other form of mop open to the public by which they could have obtained any considerable sale at a profit; and that the only way to reach a result consonant with the substantial justice of this case, is to regard the mop as an article of commerce, under the operation of laws whereby an improved article will supersede and displace an unimproved one, destroying the possibility of producing it at a profit, and thus driving it out of existence, so that the superior article, by virtue of its superiority, dominates in the market until it in turn gives way in the progress of new improvements in its kind.

It is a weak point in the argument for the plaintiff, that it assumes, without sufficient evidence, that the market for the plaintiff's mop was made solely by the fact that the mop contained the improvements patented by the plaintiff's patents. This would not follow, even from the fact that the mop, with such improvements, had driven other mops out of the market. Energy, diligence, business tact, superior facilities and skill, and fortuitous circumstances, contribute largely to the success in the market of even an article which has all the superiority, in its line, that is claimed for the plaintiff's mop. In the present case, there was an especial element, entirely outside of the plaintiff's patents, which made the manufacture and sale of the plaintiff's mop profitable, and that was the combination with the owners of the Taylor patent, under which the price of both mops was fixed at $2 a dozen.

The argument on the part of the plaintiff leads to the conclusion, that, when an article or a machine, with a given patented improvement embodied in it, has a controlling preference in the market, over the article or machine which does not embody such improvement, it must be conclusively inferred that such preference is due to the improvement; and that the patentee, in case of infringement, is entitled to the profits made by the infringer from the manufacture and sale of the whole article or machine, and is entitled, as damages, to the profits he would have made on the manufacture and sale of an equal number of entire articles or machines made and sold by the infringer. This would often cause a small improvement on a costly machine to draw to itself very large profits, entirely out of proportion to the relation existing between the improvement and the rest of the machine, and, in cases where the unpatented parts of the machine were quite as indispensable to the machine as the patented improvements, and even more indispensable. The profit on the entire machine would virtually become the license fee for the use of the patented improvement. In the case of a machine em-

bodying several patented improvements, in infringement of several patents belonging to several different persons, each patentee would claim that it was his particular patented improvement which caused the machine to dominate the market, and each would claim the profits of the manufacture and sale of the entire machine, and damages based on the same principle. The patentee must, in every case, give evidence tending to separate or apportion the defendant's profits and the patentee's damages, between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature. In the present case, the master reports that the patentee has failed to give such evidence, and I concur with the master in his conclusion.

The plaintiff's exceptions to the master's report are all of them overruled. Those which relate to the admission of testimony objected to by the plaintiff, (conceding that such objections can be availed of by exceptions to the master's report,) become immaterial, in view of the fact, that, because the plaintiff failed to give adequate evidence as to profits and damages, the defendants were not put upon their defence in that respect, and it is unimportant whether they gave competent evidence or no evidence. If the evidence objected to is all stricken out, the defendants are protected by the plaintiff's failure. They are not called upon to rebut until the plaintiff has made out a case. Black v. Munson [Case No. 1,463]. The 18th exception, that the master excluded material evidence offered by the plaintiff, and sustained the defendants' objections thereto, is too general. The 19th exception, that the master received in evidence testimony offered by the defendants, and overruled the plaintiff's several objections thereto, is too general.

The exceptions being overruled, the plaintiff asks that the case be referred back to the master, with instructions setting forth the principles on which the proper assessment of damages and profits should be made, and directing the master to receive such further evidence pertinent thereto as the parties may offer. This application is not made on any showing that the plaintiff failed, through inadvertence, to give other or further evidence, or that there exists any other or further evidence which he can give. The idea of inadvertence is negatived by the entry on the record, before referred to, at the close of the plaintiff's testimony, when the defendants moved to dismiss the proceedings on the ground assigned. No proper foundation is laid for granting the application.

There must be a decree in accordance with the master's report, and awarding to the plaintiff the costs of the suit, except the costs of the reference before the master, and of his report, and of the exceptions, and of the hearing thereon, and awarding to the defendants the costs of such reference, and report, and exceptions, and hearing.

[NOTE. For other cases involving these patents, see Garretson v. Clark, Case No. 5,250; Id., 111 U. S. 120, 4 Sup. Ct. 291; Taylor v. Garretson, Case No. 13,792.]

[On appeal by Oliver S. Garretson, this case was presented to the supreme court for adjudication. Mr. Justice Field, in delivering the opinion, quoted the following from the opinion of Blatchford, Circuit Judge, given above: "The patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature,"—and held that the plaintiff had complied with neither part of this rule, having produced no evidence to apportion the profits or damages between the improvement constituting the patented feature or the other features of the mop. His evidence went only to show the cost of the whole mop and the price at which it was sold; and, concluding, the learned justice remarked that "of course it could not be pretended that the entire value of the mop head was attributable to the feature patented. So the whole case ended, the rule was not followed, and the decree is therefore affirmed." 111 U. S. 120, 4 Sup. Ct. 291.]