### EVEREST v. BUFFALO LUBRICATING OIL Co., Limited.

(*Circuit Court, N. D. New York.* July 1, 1887.)

1. **PATENTS FOR INVENTIONS—RESTRAINING INFRINGEMENT—MOTION TO DISMISS COMPLAINT—ADVANCED VIEWS OF PATENTABLE NOVELTY.**

    Afer a decree has been made restraining the infringement of a patent, a motion to dismiss the complaint on the ground that the supreme court, since the decree, had taken advanced views upon the subject of patentable novelty, will be denied, where it appears that all the decisions so referred to had been decided at circuit, and were published and accessible before the original argument of the cause, and that the same had all been affirmed by the supreme court without advancing any new doctrine, or formulating any new test of invention.

2. **SAME—PATENTED PROCESS FOR TESTING OILS—NOMINAL DAMAGES.**

    Where a patented process for testing oils has been infringed, but it does not appear that the defendant derived any profit from the use of the process, only nominal damages can be recovered, and the fact that oil manufactured by another company, in which the process was used, sold for a higher price than that of other manufacturers, who did not use it, is not sufficient to warrant more than such nominal recovery, unless it was also shown that such enhanced value, or some part of it, was due to the use of the process.

3. **SAME—REFERENCE TO MASTER—COSTS.**

    Where a master's report is confirmed by the court, awarding only nominal damages for the infringement of a patent, the costs of the reference, including the master's fees, and the costs of the exceptions and hearing thereon, should be taxed against the complainant.

This cause was argued at the June circuit, 1884, and resulted in a decision for the complainant. 20 Fed. Rep. 848. In November, 1884, the defendant presented a petition for a rehearing, which, after argument and due consideration, was denied. 22 Fed. Rep. 252. On the thirtieth of March, 1887, the master submitted his report, in which he finds the complainant entitled to nominal damages only. The complainant filed exceptions to this report. The cause is now before the court upon these exceptions, and also upon a motion by the defendant to dismiss the bill on the ground that the patent is void for want of patentable novelty. The theory upon which the latter motion is based is that, since the interlocutory decree was entered, the supreme court, in a number of causes, has taken advanced ground upon the subject of patentable novelty, which disposes of the patent in question.

*George B. Selden* and *T. G. Outerbridge,* for complainant.

*James A. Allen,* for defendant.

COXE, J. The motion to dismiss the complaint is, in reality, but a second motion for a rehearing. Upon this subject but little need be said. The law and the facts are in precisely the same condition that they were at the argument and when the first petition for a rehearing was presented. The views of the court appear sufficiently in the decisions then rendered, and it is not necessary to reiterate them.

The causes relied upon by the defendant had been decided at circuit adversely to the respective patents before the argument of this cause. These decisions were all published, and were accessible to the defendant had it desired to make use of them. The supreme court in each instance affirmed the decree of the lower court. No new doctrine had been advanced; no new test of invention formulated. The law remains unchanged. Each case must be determined upon its own facts, and the courts, as heretofore, must ascertain, as best they may, where to draw the line through the shadowy border land which separates invention and mechanical skill. Of the recent decisions of the supreme court, the one which, upon the facts, approximates most nearly to the case at bar, is unquestionably *New-Process Fermentation Co.* v. *Maus*, 39 O. G. 1419, 7 Sup. Ct. Rep. 1304. The court reverses the decree dismissing the bill, and sustains the third claim of the patent in controversy, which covers a process, irrespective of the apparatus for carrying it out, applied to beer while in one stage of manufacture. It is not easy, on principle, to distinguish this case from the case at bar. Instead, therefore, of convincing the court that the bill should be dismissed, the decisions referred to have confirmed and strengthened the opinion that the complainants' patent is a valid one.

The master has found only nominal damages, and has accompanied his report with an opinion in which the reasons for his action are clearly stated and abundantly sustained by authority. I concur in the views expressed by him, and fail to see how he could have reached a different conclusion. It was conceded on the argument that the complainant, as he did not grant licenses or operate personally under the patent, was not entitled to damages. He certainly could not recover the defendant's profit without some evidence showing what profit was attributable to the invention. There is nothing to show that the defendant made more or lost less by the use of the fire test. The record is wholly silent upon this subject. Not only does the complainant fail to show what profit the defendant derived from the invention, but he fails to show that it derived any profit at all. For aught that appears, the defendant's use of the fire test may have been wholly without pecuniary advantage. The mere fact, if it be a fact, that fire-tested oil made by the Vacuum Company, with which the complainant is said to be connected, sold for one and one-half cents more per gallon than oil manufactured by other companies, is entirely insufficient, unless accompanied by proof that the enhanced value, or some portion thereof, was due to the use of the fire test. There is no such proof. It is manifest that, in such circumstances, there is no foundation for more than a nominal recovery. *Garretson* v. *Clark*, 111 U. S. 120, 4 Sup. Ct. Rep. 291; at circuit, 15 Blatchf. 70; *Fay* v.

*Allen,* 30 Fed. Rep. 446; *Dobson* v. *Dornan,* 118 U. S. 10, 6 Sup. Ct. Rep. 946; *Dobson* v. *Hartford Carpet Co.,* 114 U. S. 439, 5 Sup. Ct. Rep. 945; *Dean* v. *Mason,* 20 How. 198, 203; *Black* v. *Thorne,* 111 U. S. 122, 4 Sup. Ct. Rep. 326.

The motion to dismiss the bill is denied. The exceptions are overruled, and the master's report is confirmed.

Following the precedent of *Garretson* v. *Clark, supra,* the costs of the reference, including the master's fees, and the costs of the exceptions and of the hearing thereon, should be taxed against the complainant.

---

The following is the opinion of the master, Mr. JAMES BRECK PERKINS, referred to in the foregoing opinion:

BY THE MASTER: The result of the decisions makes it difficult in many cases for a patentee to recover actual damages for an infringement. It may sometimes seem hard that an improvement can be unlawfully used, and the invention be of such a character that the defendant is in little danger of being obliged to pay anything to the plaintiff for infringing upon his rights. A master, however, has nothing to do but to take the law as he finds it. Moreover, my own observation is that the report of a master is generally set aside. I can, therefore, dispose of this matter, free from any apprehension that my action will necessarily be final or injure the complainant, if I have misinterpreted the authorities.

The facts of this case are somewhat peculiar. The complainant has apparently granted no license, and has therefore no established license fee. A license fee was allowed in *Goodyear* v. *Van Antwerp,* 9 O. G. 497, and *Graham* v. *Company,* 32 O. G. 1603, cited by the complainant, but as none is proved here these cases seem to have no application. Neither did the plaintiff himself manufacture oils, or in any way use the patented improvement. He cannot, therefore, recover, on the theory that he has lost the profits on sales he would have made if the defendant had not unlawfully sold goods in which the improved process had been used, and thus filched away his customers, under the rule laid down in *Seymour* v. *McCormick,* 16 How. 480; *Goulds' Manuf'g Co.* v. *Cowing,* 105 U. S. 253; and other cases.

It appears that the Vacuum Oil Company of Rochester has used the fire test in its manufacture, but it is not shown what interest the complainant has in that company, or whether he has any. I do not see, therefore, that the complainant has sustained any damage from the defendant's infringement, and I do not understand that his counsel claims that he is entitled to recover damages in this action. But this does not dispose of his right to recover any profits which he can show that the defendant has realized from the use of the improvement, and, in order that there may be a recovery on that ground, it is not necessary to show that the defendant made a profit on its entire business. Though there was a loss, yet that loss might be reduced by the saving in the cost of manufacture resulting from the use of the patented process, or from an enhancement in the value of the goods in which it was used, and these gains would be the measure of the defendant's profits, resulting from his infringements on the rights of the patentee. *Goodyear* v. *Van Antwerp,* 9 O. G. 497; *Williams* v. *Railroad Co.,* 18 Blatchf. 181, 2 Fed. Rep. 702; *Burdell* v. *Denig,* 92 U. S. 716, 719; *Cawood Patent,* 94 U. S. 695.

It is not claimed in this case that there was any saving in the cost of manufacture of residual oils from the use of the fire test. It does not, therefore,

come under the rule of such a case as the *Cawood Patent, supra*. It is not shown that the defendant made a profit on its entire business, and it is not shown, except as it is argued from the business of the Vacuum Company, that the oils of the defendant, in the manufacture of which the fire test was used, sold for any better figures than those on which it was not used. The profit from the use of a patented improvement, under the case of *Mowry* v. *Whitney*, 14 Wall. 625, must ordinarily, I think, consist in one of two items, —saving in the manufacture, or an enhanced value for the article manufactured. Perhaps the complainant was bound to show by positive proof that one or the other of those sources of profit actually inured to the defendant, and, without this, cannot claim that profits have been established for which he can recover. But evidence has been given as to the prices received by the Vacuum Oil Company for its oils, and from this it is argued that it may be found that the defendant did actually realize, or ought to have realized, a profit on its oils in which the fire test was used, which, otherwise, it would not have gained. The proposition has been argued with much ingenuity, but I think, for several reasons, it does not authorize me in finding that the defendant actually realized profits from the use of this process. It does not appear clearly, if at all, that the Vacuum Oil Company realized any greater profits on its oils than many other companies. McGill says that its oils brought higher prices than other oils, but on his cross-examination he says certain grades of oils, made by Waters, Pierce & Co. and others, commanded higher prices. Then, again, take the oils which sold cheaper than those of the Vacuum Oil Company, it does not appear that any less profit was realized upon them. It is shown that the price of residual oils is affected by the quality of the oils which are refined, and, doubtless, by other considerations. Nothing is shown as to the manner in which the oils were made which sold cheaper than the Vacuum Company's or from what materials.

But even if it be assumed—and I do not think it can be—that the other oils were made from the same materials as those of the Vacuum Company, and cost the same to manufacture, and that the fire test was not used by them, and that the Vacuum Company made one and one-half cents per gallon more on the oil it sold than was made by others, still it would not appear how much of this profit was due to the fire test in its manufacture, and, to assume that this entire difference was due to that, would, I think, be contrary to the facts and the law.

The oil commanded better prices, it is said, because it was made more uniform than other oils; and Patterson says that the use of the fire test tended to make the batches run more uniformly. There may have been some gain to the manufacturer in this, but it cannot be said that the oil sold at one and one-half cents per gallon more simply because the fire test was used to ascertain its grade during the process of manufacture. The price of the oil depended, of course, upon its quality, except as far, if at all, as the Vacuum Company may have had special advantages in obtaining customers. This superior quality was the result of the whole process of manufacture; the use of various tests, the nature of the stills, buildings, and machinery, the skill of the employes, and other causes. Other patented processes may have contributed to this result, and a defendant might be called on to pay the total profit more than once. The remarks of Judge BLATCHFORD in *Dobson* v. *Carpet Co.*, 114 U. S. 439, 5 Sup. Ct. Rep. 945, are much in point in this case. There has been no apportionment of the profits between the patented and unpatented processes, and instrumentalities that went into the manufacture of the Vacuum Company's oil, such as is required by the authorities.

The case of *Garretson* v. *Clark*, 15 Blatchf. 70, seems to me conclusive of this case. The opinion of the master, which Judge BLATCHFORD approved, and the learned judge's own reasoning, appear in all respects in point. This

case was affirmed in all respects in 111 U. S. 120, 4 Sup. Ct. Rep. 291. It is the established law, and it will require the acuter eye of a circuit judge to distinguish it from the present case. I am unable to do so.

The case of *Tuttle* v. *Gaylord*, 28 Fed. Rep. 97, decided by Judge COXE, follows this decision, and is in point here.

The case of *Sargent* v. *Yale Co.*, 17 Blatchf. 249, reversed on another question, 117 U. S. 373, 6 Sup. Ct. Rep. 931, is not analogous to this.

The case of *Mowry* v. *Whitney*, 14 Wall. 620, is undoubtedly established law. But I do not think that the evidence here shows any fruits of the advantage from using the complainant's patent, within the guarded rules which the supreme court established in that case.

*Suffolk Co.* v. *Hayden*, 3 Wall. 315, does not conflict with later cases, such as *Garretson* v. *Clark, supra*, or *Black* v. *Thorne*, 111 U. S. 122, 4 Sup. Ct. Rep. 326.

I have discussed this case as if it was necessarily to be inferred that the defendant received the same advantage in the price of its oils, from the fact that they were fire tested, that the Vacuum Company did. It is not certain that such an inference could be drawn, but it is immaterial, in the view which I take of the case. It is not worth while to occupy time in the discussion of the weight of the evidence, and what findings it would justify against the defendant. Under the authorities which I have cited, I think that only nominal damages can be allowed the complainant.