### SEEGER REFRIGERATOR CO. v. PARKS.

(Circuit Court, S. D. New York. February 19, 1910.)

1. PATENTS (§ 328*)—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.

   The Quinn patent, No. 539,009, for a combined refrigerator and freezer, *held* valid and infringed, and a preliminary injunction granted, on prior adjudication as to both validity and infringement.

2. TRADE-MARKS AND TRADE-NAMES (§ 93*)—UNFAIR COMPETITION—USE OF NAME APPLIED TO PATENTED ARTICLE.

   On application for a preliminary injunction, the showing *held* insufficient to entitle complainant, as owner of the Quinn patent, No. 539,009, for a refrigerator, to an injunction restraining defendant from using the word "syphon" in connection with refrigerators not made under such patent; the word not being truly descriptive of the patented article, and there being a conflict in the testimony as to whether it has acquired a secondary popular meaning in that connection as identifying such article.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 93.*]

In Equity. Suit by the Seeger Refrigerator Company against Harry S. Parks. On motion for preliminary injunction. Granted in part.

Edmund Wetmore, for complainant.

Frederick P. Fish, for defendant.

HAND, District Judge. In this case the Quinn patent, No. 539,009, has been sustained upon appeal from an interlocutory decree, after final hearing and upon full proofs, in the suit of This Complainant v. American Car & Foundry Company, 171 Fed. 416. The decision of Judge Cross, and the affirmance of the Circuit Court of Appeals for the Third Circuit (178 Fed. 278) in that suit, sustains the validity of the patent, under well-settled rules, provided that the showing upon

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the prior art is here no different, which is the case. Similarly as to infringement, the issues are the same here as there, and it is of no consequence whether or not the defendant here was in privity with the substantial defendant there, the White Enamel Refrigerator Company. Indeed, the defendant cannot, and does not, very insistently urge that I have any alternative upon this application but to enjoin the use of the Bohn machines, unless made under the "Park construction," which the complainant concedes will not infringe. A writ must therefore go pendente lite in usual form against the sale of any refrigerators made, except under the "Park construction."

The real issue is over the application to enjoin the use of the name "syphon" by the defendant. The patent in suit describes a refrigerator having a vertical series of openings in the dividing section between the ice chamber and the containing chamber. These ports or louvres are in the shape of an inverted v; that is, they consist of two legs of equal length coming to a sharp apex—one leg entering the containing chamber downward, and the other the ice chamber downward. The circulation of the air from the containing chamber to the ice chamber is thought to be promoted by passing up one leg and down the other. The Bohn or Ames patent, which was held to be an infringement in Seeger Manufacturing Company v. American Car & Foundry Company, contains ports or louvres with two legs; but the leg going towards the ice chamber is longer than that towards the containing chamber, and there is no apex, but the transition in direction is effected in a curve, which is thought to lend a readier circulation of air. In each case each port or louvre runs horizontally across the whole width of the refrigerator, and does not consist of a series of pipes in a horizontal row.

In his specifications Quinn spoke of these ports as being "as it were syphons" and of their "syphon-like" action. The most elementary knowledge of physics shows that their action is in no sense syphonic, nor does the complainant attempt to assert that the name is truly descriptive of their actual operation. It does assert, however, that the apparent gross similarity, especially when viewed in vertical section, between his own ports and the similar section of a syphon has caused the term, when applied to his refrigerators, to become popularly descriptive of a refrigerator having a series of two-legged ports. The "Park construction" refrigerators of the defendant discard the leg running downwards into the containing chamber and any bend, so that they consist of a series of ports or louvres running directly downwards from the containing chamber to the ice chamber. He proposes to continue to call a refrigerator made under this construction "a syphon refrigerator," and insists that in so doing he is not using a term which describes the complainant's structure made under the Quinn patent.

At the outset a distinction must be carefully observed. It is of no consequence to the complainant how deceptive may be the defendant's use of the term "syphon" when used upon the "Park construction," unless it be a fair description of the Quinn machine. It is only in case he will be likely to divert customers from the complainant that the

complainant may object. Therefore the first consideration must be whether the complainant's machine is actually described by the word "syphon."

For the purposes of argument I shall assume that, when one has a patent, another who sells a different article may not use for it a name properly descriptive only of the patented article. The reason is not like that in usual cases of unfair trade; that is, that the defendant is indirectly representing the goods as of the complainant's manufacture, but it is because he is seeking to lead customers to suppose that his goods are in fact made as are the patentee's, and, since he has no right to make them, he has no right to induce persons to buy from him upon the representation that he does. For the disposition of this motion I need not decide this to be the law, nor do I; but it is the most favorable statement of it for the complainant, and he presents it as the theory upon which to rest his case.

The word "syphon" does not, as I have said, actually represent the action of the ports or louvres in either the Quinn or the Ames patent; but that is by no means an answer to the contention that it may fairly describe them in the speech of people. There is an analogy in appearance between the Ames louvres and a "syphon," owing to the inequality of the legs, so that their vertical section is a fair copy of the vertical section of a true syphon. The analogy becomes more important in view of the designs used in advertisement, which show such vertical sections, and so permit the public to become familiar with the apparent similarity. That similarity is much less between the Quinn ports or louvres and a real syphon. The whole function of a syphon depending, as it does, upon the difference in height between the column of fluid in the ascending tube and that in the descending, it would be improper to make them of equal length, for it would involve an unnecessary immersion of the ascending tube. In practice I have never in my somewhat limited experience seen syphons with equal legs.

However, this is not conclusive, because there remains a very colorable apparent analogy between the flow of air first up and then down in the Quinn patent and the flow of liquid in a syphon. This no doubt led Quinn in perfect good faith to speak of his louvres as "syphon-like." Therefore, if it were proved with enough certainty that in the popular mind his louvres, or any two-legged louvres, were thought of, and spoken of, as "syphons," and his refrigerator as a "syphon refrigerator," I should say that he came within the rule of law which I am assuming to be correct. But in view of the fact that the word "syphon" is not truly descriptive, it must rest upon the complainant to show, and upon this application to show without substantial conflict, that the word, though not properly descriptive, has in fact acquired what we should call, in a mere usual case of unfair trade, "a secondary meaning," under which it became pro hac vice truly descriptive, not of a true syphon, but of this especial construction.

Upon that issue I think that there is a substantial and bona fide issue, especially in view of the much greater publicity given to the Ames refrigerator. From that publicity it may prove true that the public has associated the spurious use of the word "syphon" especially with

the Ames construction, which more nearly resembles a syphon, and has not come generically to refer to any two-legged port as a "syphon." If there be such a bona fide conflict, I should not intervene at this time upon affidavits.

This being the crux of the controversy, I will take up the evidence in detail. In the tenth article of the bill the complainant alleges that its predecessors in title and itself in "advertisements and catalogues termed said ports 'siphons', and 'syphons,' * * * and said word 'siphon' * * * by its continued use * * * became * * * the name for, and means only," the Quinn patent. This general allegation, though sworn to by Seeger, is clearly not enough in itself alone to prove the secondary meaning necessary. In his affidavit upon this motion these allegations are repeated with greater detail and with enough particularity to sustain the complainant's contention, if it was uncontradicted. While no instances are given, the conclusions are yet enough. In addition, it appears that the Seeger refrigerators are spoken of as "syphon refrigerators" in their catalogues, and that the louvres are called "syphons."

However, the defendant produces five large dealers in refrigerators who are willing to swear that "there is no construction of refrigerators known in the trade generally as 'syphon refrigerators.' The term 'syphon' has no special meaning in the trade, and does not apply to any particular type of refrigerator, regardless of who makes it." I may not disregard the testimony of these dealers, or assume that what they say is untrue. They raise a real issue, which must await proofs and final hearing. It is of no consequence whether "Bohn syphon" means only Bohn's manufacture. It is quite enough if it means only the especial kind of "syphon," and that only, which Bohn has used. Only in case it has come to mean in the public mind any two-legged port or louvre, can the complainant succeed upon his theory. It may well be that he can so succeed when the cause is heard.

Parks' own affidavit also states that for the last six years the name "syphon" has been so associated with "Bohn" that it suggested Bohn's make and had no generic meaning. I do not accept this as equivalent to a statement that the word "syphon" added nothing to the word "Bohn." Were it a case of unfair trade, I should not be inclined to hold that "syphon" was a part of the manufacturer's style. Here, however, it is no answer to say that "syphon" is merely descriptive, as it would be in a case of unfair trade. I believe it is descriptive, and I regard that fact as unimportant, so long as it describes the Ames louvres, and does not describe the Quinn. It is the square conflict upon that which controls this application.