BRINTON et al. v. PAXTON et al.

(Circuit Court of Appeals, Third Circuit. December 22, 1904.)

No. 12.

1. PATENTS—VALIDITY AND INFRINGEMENT—KNITTING MACHINES.

The Paxton and O'Neill patent, No. 521,218, for a fashioning device for circular knitting machines, *held* valid, and infringed as to claims 1, 2, and 3 by one device made and sold by defendant, and as to claims 1 and 2 by a second device.

2. SAME—DAMAGES FOR INFRINGEMENT—PART OF MACHINE.

The damages recoverable for infringement of a patent covering a part of a machine must be determined on the best evidence obtainable, the burden resting upon complainant, however, to prove his case. Where the profit made on the patented part alone is shown, separate and apart from that made on the machine as a whole, and it also appears that no other substitute mechanism on the market was open to the use of defendant, complainant is entitled at least to recover such profits.

3. SAME.

Where a part of a machine made and sold by defendant is found to infringe complainant's patent, the court will not undertake to determine, in reduction of damages, the collateral question whether or not such part also infringes another patent, the validity and scope of which are not directly put in issue.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Joshua Pusey, for appellants.

Joseph C. Fraley and Henry N. Paul, Jr., for appellees.

Before ACHESON and GRAY, Circuit Judges, and HOLLAND, District Judge.

HOLLAND, District Judge. This bill alleges that respondents infringed claims Nos. 1, 2, 3, and 4 in letters patent No. 521,218, granted to John B. Paxton and Ellis I. O'Neill June 12, 1894, for fashioning devices for circular knitting machines. Upon argument the Circuit Court for the Eastern District of Pennsylvania so found, and entered a decree February 27, 1901, sustaining the validity of the patent, awarding an injunction against the respondents directing an accounting, and appointed a master to state the account. Subsequent to the issuing of the injunction, the respondents began the manufacture of a similar device, referred to in these proceedings as "Picker No. 3," and the complainants came into court alleging an infringement of the same claims in their patent in the manufacture of this picker. This question was referred to the master already appointed, who found the respondents' picker No. 3 did infringe, and further found and assessed damage to the complainants in the sum of $1,221.89. Upon hearing, this amount was reduced to $1,189.67, and a decree entered January 6, 1904, directing the respondents to pay complainants that amount, together with interest from the date of filing the master's report, and costs. On February 3, 1904, the respondents appealed to this court, and assigned as error the decrees of the Circuit Court made and entered on February 27, 1901, and January 6, 1904. The assignments of

error raise the questions (1) as to whether pickers Nos. 2 and 3 infringe complainants' claims Nos. 1, 2, 3, and 4; and (2) was the decree against respondents for $1,198.67 properly entered?

In an opinion reported in 107 Fed. 137, the court below held that respondents' picker No. 2 infringes the claims in question, and awarded an accounting. In this, and for the reasons there stated, we concur; but the question as to whether picker No. 3 of respondents infringes the complainants' device was not then considered, as it was designed and put upon the market subsequent to the determination of the question of infringement raised in the original bill, and while the question of account was before the master, to whom this question of infringement was also referred by the court. The master found that this picker infringes claims Nos. 1 and 2 of complainants' patent, and included it in his report in assessing damages to them. This picker No. 3 carries the needle from the higher to the lower plane by a simultaneous rotary movement on the post, and a downward swing of the picker from a relatively fixed pivot on the lower end of the post, but at the same time it is a movement in a direction coincident with the axis of its rotation, and, instead of the arm sliding up and down the post, what has been aptly styled "the business end" of the arm, moves in a direction coincident with the axis of rotation. It appears that the complainants' invention covers an improvement in fashioning device for circular knitting machines, and in the description they state that:

"Upon a consideration of the types of our invention described in the foregoing specifications it will be obvious that they all have in common a characteristic principal of operation, viz., that a rotatable arm, so mounted as to be free to move in a direction coinciding with the axis of its rotation, is combined with guiding devices which compel such movement in the direction of the axis of rotation whenever the arm is rotated. We thus obtain the needle-shifting action by a movement which is the derivative of the rotation of the arm caused by its engagement with the needle hub in the act of passing by the same. While, therefore, we have specified the preferred methods of effecting this derivative movement, we do not limit ourselves to the use of the specific devices shown for effecting it; the only essential being that there should be, in combination with a rotatable arm, having the capacity to move in the direction of its axis of rotation, mechanism which is capable of modifying what otherwise would be a mere movement of rotation, and obtaining a resultant movement in what may be appropriately termed a spiral path."

It will be seen that this invention thus described is claimed by the complainants in their claims Nos. 1 and 2, as follows:

"(1) The combination with the needle cylinder, the cam cylinder, and actuating mechanism for said cam cylinder, of a rotatable needle shifter, capable of movement in the direction of its axis of rotation, and actuating mechanism arranged with reference to said needle shifter, substantially as set forth, whereby movement of the needle shifter in a direction coincident with said axis is derived from the rotation caused by engagement with and passage by the needle hub.

"(2) The combination, with the needle cylinder, the cam cylinder, and actuating mechanism for said cam cylinder, of a rotatable needle shifter, capable of movement in the direction of its axis of rotation, and a cam having an incline arranged with relation to said needle shifter, substantially as set forth, whereby movement of the needle shifter in the direction of said axis is derived from the rotation caused by engagement with and passage by the needle hub."

These two claims broadly cover a picker with a rotatable arm with a capacity of moving in the direction of its axis of rotation, and this is the device that seems to have overcome the objections in others already upon the market, as the movement was found to be much easier, and of a nature to accomplish the best results in knitting machines. The preferred method of effecting the derivative movement accomplished in complainants' device is set forth by them, and in that the rotatable arm is mounted upon a post, and is free to move up and down in a direction coincident with the axis of its rotation; but any other device which accomplishes this movement of the picker arm is within the contemplation of their description and the two claims above mentioned. We think, therefore, that the master and the court below were right in holding that picker No. 3 infringes claims Nos. 1 and 2 of complainants' patent.

It is conceded that 778 machines were made by the respondents, each having 4 pickers attached, a dropper and lifter on each side. They, however, only used a device or picker which infringed the complainants' picker as a dropper or top picker, one on each side of each machine manufactured; but did not use the lifter. As it appears that $10 profit was made upon the sale of each machine by the respondents, the complainants urged that they were entitled to one-half, or $5, on each machine, or, as an alternative, they were entitled to the amount of profit made by the respondents on the sale of each separate picker mechanism. It is established that they sold 204 machines containing picker No. 2 at a profit of $1.105 on each picker (the said 204 machines being sold subject to a discount of 25 per cent.), equal to $225.42; 310 machines containing picker No. 2, at a profit of $1.935 on each picker, equal to $599.85; 164 machines containing picker No. 3 at a profit of $1.10 on each picker (the said 164 machines being sold subject to a discount of 25 per cent.), equal to $180.40; 100 machines containing picker No. 3 at a profit of $1.93 on each picker, equal to $193—the total amount of profits on pickers of the said 778 machines being $1.198.67. The respondents were selling the infringing device in connection with a machine or mechanism containing a large number of unpatented parts, which, as a whole, had a commercial value, upon which a profit was realized, according to the admissions of respondents themselves, of $10 on each machine. The complainants, however, failed to establish just what portion of the profits were due to the infringing mechanism, and the master rejected their claim for the whole of the profits on the machine sold, for the reason that a patentee must show in what particular his improvement had added to the usefulness of the whole machine or contrivance. He must separate its results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated. Garretson v. Clark, 111 U. S. 121, 4 Sup. Ct. 291, 28 L. Ed. 371. It, however, plainly appears that the profits made upon each set of pickers attached to the machine sold by respondents, separate and apart from the machine itself, amounted in all to $1,198.67. This amount was awarded, and a decree entered accordingly.

In some cases of infringement of patented improvements it is very difficult to exactly establish the damages resulting to the complainants, and, of course, the best evidence obtainable must be relied upon in cases of this kind; but the complainants must, notwithstanding this difficulty, prove their case. The complainants established that respondents made a certain profit upon the infringing devices of certain amount upon each and every one of them, separate and apart from the mechanism to which it is intended to be attached, and, it appearing that no other picker mechanism upon the market was open to the respondents to use, the master, under the circumstances, was justified from this evidence, together with other facts and circumstances before him, in finding that the total amount of these profits was the amount of the complainants' damages. Mason v. Graham, 90 U. S. 261, 23 L. Ed. 86; Lattimore v. Hardsoog Mfg. Co., 121 Fed. 986, 58 C. C. A. 287; Robinson on Patents, § 1062, and notes. The respondents, however, urge that these complainants are not entitled to recover the entire profits thus ascertained, because these infringing pickers Nos. 2 and 3 may be said to be not only infringements upon the complainants' patent, but are also covered by the sixth claim of patent No. 451,637, issued to Mayo on October 13, 1891, and the burden is on the complainants to separate the profits attributable to respondents' infringements of the patent in suit from those attributable to the use of the Mayo invention. In other words, they urge that, as they are infringing complainants' and Mayo's patents, the complainants must establish just what part of the profits is attributable to the advantageous features of the complainants' patent and what is derived from the Mayo patent. This claim of the Mayo patent was recently before the Circuit Court for the District of Rhode Island, and Judge Brown gave it a certain specific construction, and observed that, if such construction were not given to the claim, it would, in the opinion of the court, be invalid (Mayo Knitting Machine & Needle Co. v. E. Jencke Mfg. Co. et. al. [C. C.] 121 Fed. 110); and the master in the case at bar found from the limited evidence before him that, if the claim in question be construed as it was by the court in Rhode Island, it is not infringed by the respondents' structures, and, if the said claim be given any construction of a broader nature, it would, in accordance with the opinion in the above-entitled case, be invalid. But, aside from the question as to whether or not the respondents' pickers Nos. 2 and 3 infringe the Mayo patent as well as that of complainants, there is another objection to this contention of the respondents that they are to be for that reason relieved from a portion of the damages claimed by the complainants, and that is that it has been the uniform practice of the courts to refuse to determine such collateral questions in suits where the validity and scope of a third party's patent are not directly put in issue, and this finds direct support in the decision of the Supreme Court in McCreary v. Pennsylvania Canal Company, 141 U. S. 459, 12 Sup. Ct. 40, 35 L. Ed. 817.

The decrees of the court below are affirmed.