AMERICAN CAR & FOUNDRY CO. v. SEEGER REFRIGERATOR CO.

(Circuit Court of Appeals, Third Circuit. November 27, 1909.)

No. 36 (1,283).

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—REFRIGERATOR.
   The Quinn patent, No. 539,009, for a combined refrigerator and freezer, *held* not anticipated, valid, and infringed by the refrigerator of the Ames patent, No. 625,309.

2. PATENTS (§ 312*)—SUIT FOR INFRINGEMENT—ESTOPPEL.
   Evidence *held* insufficient to establish the defense of estoppel to a suit by a corporation for infringement of a patent.
   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 312.*]

Appeal from the Circuit Court of the United States for the District of New Jersey.

Suit in equity by the Seeger Refrigerator Company against American Car & Foundry Company. Decree for complainant (171 Fed. 416), and defendant appeals. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Samuel R. Betts and Paul Bakewell, for appellant.
Edmund Wetmore, for appellee.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

LANNING, Circuit Judge.   By its final decree in this case the Circuit Court adjudged the Quinn patent, No. 539,009, for improvements in a combined refrigerator and freezer, to be valid, and that the defendant (the appellant here) was an infringer of claims 1, 3, and 7 thereof.   The defendant now contends that the decree is erroneous because (1) of invalidity of the patent, (2) of insufficient proof of infringement, and (3) of equitable estoppel against the complainant (the appellee here) sufficient, even if the patent be valid and infringement be shown, to require the reversal of the decree and the dismissal of the bill.   All these defenses were set up in the defendant's answer, were the subject of examination when the proofs were taken, and were considered and decided against the defendant in the opinion of the Circuit Court published in 171 Fed. 416.

As to the first objection—that the patent is invalid—the principal argument is that the prior state of the art deprived the Quinn structure of patentable novelty.   For the better understanding of the argument, Fig. 1 of the Quinn patent is here inserted:

Fig.1.

The inverted V-shaped characters, placed in vertical line and shown by the letter h, represent sections of the partition between the refrigerating room, k, and the ice bunker, l.   The open spaces, j, pro-

vide passageways for the air from the refrigerating room to the ice bunker. In his specification the patentee says:

"These sections are so arranged that the apex of one is higher than the lower extremity of the one next above it, so that said spaces, j, between each two adjacent sections form, as it were, air siphons leading from the refrigerating room, k, into the ice bunker, l."

At the bottom of the ice bunker is a wire netting which allows the free passage of water into the drip pan, r, as well as of cold air into the space below. In describing the operation of the refrigerator the patentee says:

"The cold air in the ice bunker passes down through the netting directly, and also out through the ports, u, and thence through the netting, at the bottom of the bunker, and thence under the bunker and into the bottom of the refrigerating room. As the cold air descends in the bunker, each space, j, becomes, as it were, a siphon, drawing the air in the refrigerating room through said spaces into the ice bunker and down through the ice and netting. The inclining downward of the parts of the sections gives a downward motion to the column of air passing through the spaces, and, the apex of each being higher than the lower extremity of the one next above, there will be no drawing of the air horizontally across the bunker."

This partial description of the construction of the refrigerator and of its operation is sufficient to show that the distinguishing feature of the structure is the free and continuous circulation, through the ice bunker and the refrigerating room, of its body of confined air. This circulation is greatly promoted by the arrangement of the spaces, j, in the partition between the ice bunker and the refrigerating room. It is true that the prior art shows refrigerators in which circulation is to some extent promoted by the use of siphon-like air tubes or conduits. Castell, No. 348,450, contains such air siphons, and there is something approaching siphonic action in Bettridge, No. 208,148, and in Birdsall, No. 195,565. But they are far removed from Quinn's device and do not in the remotest manner suggest its essential feature. Quinn was the first to put between the ice bunker and the refrigerating room of a refrigerator a partition composed of a series of inverted V-shaped sections so arranged that the open spaces, to use the language of the patent, "form, as it were, air siphons leading from the refrigerating room into the ice bunker." It is this series of open air spaces, somewhat resembling siphons, placed between the ice bunker and the refrigerating room, that distinguishes Quinn's patent from all the earlier patents. With the exits of these so-called "siphons" opening downwards to allow the free escape of the air into the vacuum created by the descending currents in the ice bunker, and their mouths opening downwards to facilitate the induction into them of the ascending currents of warmer air in the refrigerating room, circulation is promoted in a manner quite new. The nearest approach to it in the prior art is Player, No. 503,772. His patent is for a refrigerator car, and shows, between the ice tank and the compartment in which the articles to be preserved are stored, a partition which is composed of inclined slats placed over one another and separated by air spaces. There is in this device, however, no suggestion of Quinn's partition with its inverted V-shaped sections, all facilitating circulation. Player's slats,

moreover, are preferably covered with a sheathing for the protection of the tank, so that the circulation is caused, chiefly at least, by the passage of a current of air from the ice tank under the slatted partition into the bottom of the storage compartment and from the storage compartment over the slatted partition into the top of the ice tank. We have no hesitation in saying that such a structure does not anticipate Quinn. We find nothing that does, and are of the opinion that the Quinn patent should be sustained as a valid one.

Upon the question of infringement the defendant avers, in its answer, that the refrigerators used by it are protected by the Ames patent, No. 625,309. That patent, which is also for improvements in a refrigerator, was applied for more than 2½ years after the Quinn patent had been granted. The following is Fig. 1 of the patent:

It will be observed that Ames has, between the ice bunker and the refrigerating room, a partition composed of a series of sections placed one above the other, with intervening air spaces, as has Quinn. In Ames one leg of the siphon is longer than the other, while in Quinn both legs are of the same length; and in Ames the apex is curved, while in Quinn it is angular. In his specification Ames says:

"The ports which constitute the wall separating the food chamber and ice bunker are of siphon shape, with the short conduits extending downwardly into the food chamber and the long conduits extending downwardly into the ice bunker adjacent to the ice. The air in the long conduits being cooled and increased in specific gravity by the ice will drop, creating a vacuum, into which air from the short conduits passes, thus setting up a circulation. The

currents of air pass from the siphon-ports through the bottom of the bunker to the food chamber and rise in the food chamber. As the air currents pass upward in the food chamber they are drawn into the short legs of the siphon-ports, and as said short conduits or legs extend downwardly in the food chamber the currents are drawn therein in line with the path of their flow."

That the principle in physics which induces free circulation in Ames is exactly the same as in Quinn seems too plain to require further elucidation. It is possible that the form of the Ames sections is an improvement upon Quinn, and for that improvement, if it exists, the Ames patent may be valid. But to allow Ames, or any one who manufactures refrigerators under the Ames patent, or in substantial conformity with it, to appropriate all that the Ames patent describes, is to allow him to appropriate the very essence of the Quinn invention. Indeed, we think that, while the application for the Ames patent was pending in the Patent Office, Ames abandoned, if he had ever asserted, any claim to an original invention for promoting circulation by siphonage. In one of his communications with the Patent Office he said:

"We think there is a misunderstanding on the part of the examiner as to what we claim. We do not claim that the circulation in this refrigerator is caused by siphonage and that the circulation in others is not. All we claim is that by having the inner leg of the ports, which make up the partition wall, of greater length than the outer legs, certain very important advantages are obtained. * * * We claim, and it is proven by experiments that have been made, that having the inner leg of greater length than the outer leg (sic) will result in the circulation of air under condition where circulation in the Quinn would be practically stopped."

What Quinn did was to introduce into refrigerators a new method of promoting the circulation of a confined body of air by the use of the open air spaces in his partition. While he says these spaces "form, as it were, siphons," and while his spaces are not true siphons, since both legs are of the same length, still, in both refrigerators, the air currents pass in the same directions through the same parts of the partition, and are induced by the same causes. The form of Ames' air spaces may be an improvement upon the form of Quinn's air spaces; but, even if so, that fact does not entitle Ames to appropriate, as against Quinn, the essential feature of the Quinn patent, or to extend, as against the public, the term of the monopoly granted to Quinn. If Ames invented an improvement upon Quinn, his patent must be limited to that improvement. The defendant's refrigerators embody not only the improvement, if it be an improvement, of Ames, but the idea of Quinn. We concur in the opinion of the Circuit Court that the infringement of the Quinn patent is shown.

The defense of estoppel, we think, has not been established. It appears that John A. Seeger, a stockholder in and secretary of the complainant company, was at one time the vice president of the Bohn Manufacturing Company, which was then manufacturing the Ames refrigerators. The Bohn Manufacturing Company, acting through Seeger as its agent, sold its business of manufacturing the Ames refrigerators to Gebhard Bohn, who formed a partnership with his son and one Adolph Gallasch under the name of the "White Enamel Refrigerator Company." Subsequently, Gallasch assigned his interest in the partnership to Gebhard Bohn. The White Enamel Refrigera-

tor Company was then incorporated. Later still, Gallasch purchased the Quinn patent, which was subsequently assigned to the complainant company, of which Gallasch was formerly president, and Seeger, as above stated, is secretary. The defendant, American Car & Foundry Company, is a manufacturer of railroad cars which it has equipped with the Ames refrigerators sold to it by the White Enamel Refrigerator Company. These statements are not contradicted. There are other statements in the record on the question of estoppel that are irreconcilable. We have carefully considered the evidence on this branch of the case and do not find that the defendant has shown by that preponderance of evidence necessary to establish the defense of estoppel that it has relied on or been misled by any act or statement either of the complainant company or of Seeger or Gallasch, its officers. There is no satisfactorily proven basis, we think, upon which an estoppel can be founded.

Upon the whole case, therefore, we conclude that the decree of the Circuit Court should be affirmed, with costs, and it is so ordered.