SEEGER REFRIGERATOR CO. v. AMERICAN CAR & FOUNDRY CO.

(District Court, D. New Jersey. March 20, 1914.)

1. PATENTS (§ 318*)—INFRINGEMENT—DAMAGES—PROFITS RECOVERABLE.

Where a mechanism is supplied by a manufacturer under a contract and in conformity with specifications necessitating patent infringement, with respect to some feature or detail, without which requirement the particular contract would not have been made, the owner of the patent may not recover total profits made by the manufacturer from the contract; the profits recoverable being only those resulting from infringement of the patent monopoly, measured by the extent to which such infringement has been pecuniarily beneficial to the wrongdoer, to wit, those profits of which the infringer can be properly treated as a trustee ex maleficio.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

2. PATENTS (§ 318*)—INFRINGEMENT—PROFITS.

The fact that an infringing mechanism embodied in a refrigerator car body was a combination was not decisive of the question of divisibility or indivisibility of profits resulting to the infringer from the manufacture and sale of the cars.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. PATENTS (§ 243*)—INFRINGEMENT—COMBINATION.

Where a patented combination is an entire and indivisible entity, infringement occurs when the infringing mechanism contains all the elements of the combination as shown or their mechanical equivalents, co-operating or coacting in substantially the same manner, to produce a result of substantially the same nature; a use of any one or more, but not all of the elements, being insufficient.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 382–384; Dec. Dig. § 243.*]

4. PATENTS (§ 26*)—COMBINATION OF OLD ELEMENTS—INVENTION.

Where the elements of a combination and the combination itself are old and well known, patentability may be imparted to it by an invention, alteration, or improvement of one or more of the elements whereby the utility of the combination is increased; the invention being confined to the element or elements so altered, or improved.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*]

5. PATENTS (§ 318*)—INFRINGEMENT—PROFITS.

Where a patented invention was confined to an alteration or improvement of one or more old elements increasing the utility of a combination, and a case against an infringer was not susceptible of an apportionment of profits, either from its nature or from a failure to keep proper accounts, or other cause making it impossible to establish the amount of profits on the combination attributable to the improvement or alteration, complainant may recover the entire profits.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

6. PATENTS (§ 318*)—DAMAGES—PROFITS RECOVERABLE.

To ascertain the measure of profits or damages recoverable for infringement of a patent, it is the court's duty to regard the real nature of the invention, whether constituting a mere improvement of an old device, or in a substantial sense a new and entire combination.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

7. PATENTS (§ 318*)—INFRINGEMENT—REFRIGERATOR CARS—PROFITS—APPORTIONMENT.

Where plans and specifications for certain refrigerator cars manufactured by defendant called for certain infringing refrigerator partitions, which afforded greater circulation of air in the car body, but the entire value of the car body was neither in law nor in fact attributable to the invention, and the difference in efficiency for refrigeration between infringing and noninfringing partitions was but slight, the case was one calling for an apportionment of profits if practicable.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

8. PATENTS (§ 318*)—COMBINATION—PROFITS.

Where a patented improvement combining old elements increases the efficiency or value of the mechanism, but does not change its function or affect the principle of its operation, the patentee in seeking to recover profits from an infringer is limited to the excess of profits realized by him from the use, manufacture, or sale of the mechanism as improved, over what he might or would have made from the manufacture, use, or sale of the old mechanical combination.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

9. PATENTS (§ 318*)—INFRINGEMENT—PROFITS—APPORTIONMENT.

Where, on an assessment of profits for patent infringement, the nature of the case does not per se exclude the possibility of just apportionment, and whatever difficulty exists grows out of special circumstances, complainant can recover the entire profits made by the infringer only after showing that he has realized profits and making every reasonable effort, unsuccessfully, to apportion the amount attributable to the patented invention; the burden of proof not being shifted from complainant to defendant until after complainant has proven the existence of profits attributable to the invention, and demonstrated that they are impossible of accurate or approximate apportionment.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

10. PATENTS (§ 319*)—PROFITS—APPORTIONMENT—NOMINAL DAMAGES.

Where, in a suit for patent infringement, the case was one calling for an apportionment of profits, but complainant made no effort to prove the amount of profits reasonably attributable to the infringement, relying on the position that it was entitled to recover the entire profits made by defendant from the sale of certain refrigerator cars containing the infringement, complainant could only recover nominal damages.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 577–586; Dec. Dig. § 319.*]

In Equity. Suit for patent infringement by the Seeger Refrigerator Company against the American Car & Foundry Company. A decree for complainant having been rendered, the case was referred to a master to state and report an account of profits. Exceptions to the master's report sustained.

See, also, 178 Fed. 278, 101 C. C. A. 542.

Wetmore & Jenner, of New York City, for complainant.
Fish, Richardson, Herrick & Neave, of Boston, Mass., for defendant.

BRADFORD, District Judge. This suit is before the court on exceptions to a master's report touching profits alleged to have been made by the American Car and Foundry Company, the defendant, through its infringement of the first, third and seventh claims of letters patent of the United States No. 539,009, dated May 7, 1895, granted to Gilbert F. Quinn, assignor to the G. F. Quinn Refrigerator Company, and by mesne assignment assigned and owned by the Seeger Refrigerator Company, the complainant. The circuit court for the district of New Jersey, in 1909, sustained the validity of the above mentioned claims and decreed that they had been infringed by the defendant. (C. C.) 171 Fed. 416. On appeal this decree was affirmed. 178 Fed. 278, 101 C. C. A. 542. It having been decreed that the complainant recover of the defendant profits and damages on account of the infringement, the case was referred to a master to state and report an account of such profits and ascertain and report such damages. The master has reported that the profits made by the defendant by reason of the infringement amount to $662,923.20. He has not reported any damages, nor have any been claimed.

In the description of the patent in suit Quinn states:

"My invention relates to improvements in a combined refrigerator and freezer, and more particularly to certain principles of construction, which

tend to increase the refrigerating and freezing power and to regulate the degree of temperature."

The essential and distinguishing feature or element in the combination of the above-mentioned claims has been stated by both the circuit court and the circuit court of appeals.

The former court said:

"The important feature of the invention is found in the form of the partition in the refrigerator between the ice bunker and the food chamber, which, as set forth in the specifications and claims, contains a series of inverted V-shaped ports, by means of which a continuous circulation of air in the refrigerator is provided.

The circuit court of appeals said:

"Quinn was the first to put between the ice bunker and the refrigerating room of a refrigerator a partition composed of a series of inverted V-shaped sections so arranged that the open spaces, to use the language of the patent, 'form, as it were, air siphons leading from the refrigerating room into the ice bunker.' It is this series of open air spaces, somewhat resembling siphons, placed between the ice bunker and the refrigerating room, that distinguishes Quinn's patent from all the earlier patents. * * * What Quinn did was to introduce into refrigerators a new method of promoting the circulation of a confined body of air by the use of the open air spaces in his partition."

The accounting period extends from October 15, 1900, to June 28, 1909, and covers the manufacture and sale by the defendant of 16,032 freight refrigerator cars, embodying the combination of the patent in suit. The entire profits derived by the defendant from the manufacture and sale of those cars was $2,753,335.68, representing an average profit of $171.74 per car. All these cars were sold by the defendant to railroad companies under contracts specifying that they should be provided with a certain partition known as the Bohn partition, decided in this case to be the mechanical equivalent of the Quinn partition, and, with its associated elements, an infringement of the Quinn patent. Each car was sold as an entirety including not only the body of the car but its running-gear, without any apportionment of the contract price between the two. The master, I think, has attached to the fact that the contracts under which the freight refrigerator cars were manufactured and sold by the defendant to the railroad companies required in their specifications that they should contain the Bohn partition, an unwarranted degree of importance. His reasoning from that contractual requirement, if carried to a logical extreme, would show that the complainant is entitled to recover the entire profits realized by the defendant on the 16,032 freight refrigerator cars, amounting to $2,753,335.68, and not merely the sum of $662,923.20 allowed by the master as profits realized by the defendant on the bodies of those cars. For the contention of counsel for the complainant and the position of the master have been that the profits which the complainant seeks to recover in this suit were realized by the defendant solely under its contracts of sale with the railroad companies, in which the Bohn partition was specified and required; that had it not been for such stipulation for infringement the cars would not have been sold to the railroad companies who thus contracted for their purchase; and that the profits actually received

by the defendant from sales under such contracts having been rendered possible solely through infringement by the defendant are, therefore, recoverable by the complainant. The counsel for the complainant in their brief say:

"The master has found and the evidence is uncontradicted that, as shown elsewhere, the entire profit of the sale of the refrigerator cars was due to the presence of the Quinn invention, because it is established that the sale could not have been made without the presence of that invention. *  *  * Whether or not the invention is for a whole refrigerator or for a part of a refrigerator, is immaterial, because in either case it appears most conclusively that the entire salable value of the infringing refrigerators was due to the presence of the invention; that is to say, the infringing refrigerators were the only thing that could fulfill the orders therefor which the defendant accepted, and if it had not furnished those refrigerators it could not have filled the orders and would not have made the sales for which it has been held to account. *  *  * The invention of the patent in suit furnished the sole element of salability that enabled the infringing refrigerator cars to fulfill an indispensable requirement of each separate contract under which said cars in every instance were sold."

[1] The idea is thus advanced by both the master and the counsel for the complainant that, where mechanism is supplied by a manufacturer under a contract and in conformity with specifications necessitating patent infringement with respect to some feature or detail included in such mechanism, without which requirement that particular contract would not have been entered into between the contracting parties, the total profits, by virtue of these facts alone are recoverable by the owner of the patent, even with respect to those parts of the mechanism not covered by the patent monopoly. I am unable to accept this proposition as a sound exposition of the law. The profits recoverable are those directly resulting from the infringement of the patent monopoly measured by the extent to which such infringement is pecuniarily beneficial to the wrongdoer. They do not necessarily include all gains of the infringer which owing to stipulations or special circumstances could not have been realized without the infringement, but only those of which the infringer can be treated as a trustee ex maleficio. The court would not, I think, have authority under the patent laws to award profits beyond this limit. The counsel for the defendant with respect to the theory advanced by the master and the counsel for the complainant well say:

"The theory is unsound as well as novel. Each patent owner is entitled to the profits that the infringer has made from the use of *his invention*, and to nothing else. There might be a hundred features of the defendant's car which infringed a hundred patents. The insulation, the drains, the ventilators, the door locks, door packings, all in the car body, even the kind of paint used or the structure of the walls, roof or flooring, might each be an infringement of several patents. It is certainly not the law that solely because these devices are specified in the contracts under which the defendant built the cars, the defendant must pay to each one of the patentees the entire profit on the cars. *  *  * The complainant's theory adopted by the master would not, in the present case, stop short of awarding the entire profits on the entire car, running gear as well as body, because, on the same reasoning, the defendant could not have performed the contract, and therefore could have made no profits on the running gear, including air-brakes, draw-bars, axle-boxes, wheels, trucks, etc., of these cars if it had not equipped them with the Bohn siphon partitions. *  *  * It would compel the builder

of a $10,000,000 ocean steamship to pay his entire profits to the owner of a patented steering mechanism if infringing steering mechanism is specified in the contract for the ship. It would compel him to pay it also to every other patentee whose patent is infringed by any device specified in the contract. The building contractor of a $50,000,000 building would be obliged to pay his entire profits to the owner of a patent which is infringed by the kind of ventilating system which the contract specifies must be used. And not only must such a contractor pay his entire profits to this patentee, but to every other patentee whose patent has been infringed by any device specified in the contract. In each and every case the patentee could have said, with the complainant and the master in this case, to the contractor:—'You could not have performed your contract if you had not infringed, and hence, because if you had gone without the contract, you would not have made any profits, all the profits which you did make belong to me.' "

It is unnecessary further to discuss the point just considered. Indeed, the counsel for the complainant during the oral argument admitted, as the court understood, that the mere fact that the specifications of the contracts, by requiring the introduction of the Bohn partition into the cars in question, rendered its presence in them indispensable to their sale under the contracts under which they were in fact sold, did not and does not entitle the complainant to recover from the defendant the total profits on the cars. To hold otherwise would be virtually to affirm that wherever one sells a piece of mechanism which in any respect infringes a patent the vendor can be compelled to pay to the patent owner the total profits on the sale, regardless of the general salability of the mechanism without the patented feature or features or any confusion or commingling of profits;—a proposition utterly at variance with the authorities.

The principles determining the divisibility or indivisibility of profits as between patent owner and infringer, aside from their confusion or intermingling through an omission to keep proper accounts or otherwise, are intelligible and reasonable, although in particular cases much difficulty may arise in their practical application. The cases in which, in the absence of confusion or intermingling as above mentioned, infringers have been compelled to account for the total profits realized by them from the infringing process or mechanism, are clearly distinguishable from that now under consideration. In Carborundum Co. v. Electric Smelting & Aluminum Co., 203 Fed. 976, 122 C. C. A. 276, the court of appeals for the third circuit held that:

"On an accounting for profits, and not for damages, in a case of infringement, where profits to the infringer are impossible save through his infringement, he must be treated as a trustee ex maleficio and can withhold none of his gains from the patentee."

But that court, while recognizing that in the case of mechanical inventions "where the entire commercial value of the mechanism arises from the patented improvement the owner of the patent will be entitled to recover from the infringer the total profits derived from the manufacture, use or sale of such mechanism," declared that "where the infringed patent covers a mere improvement upon mechanism before known and open to the defendant to use the complainant can recover only the excess of such profits as have been realized through the use of the improvement over what the defendant might have made by

the use of such mechanism without such improvement." In the carborundum case the patent in suit covered a new process for the production of an entirely new and useful chemical compound—carborundum —and every pound or ounce of that material manufactured by the infringer was wholly the result and embodiment of the infringement. Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000, bears a strong analogy to the carborundum case on the question of the right to recover total profits. There the court dealt with a patented combination product in its essential nature unitary and entire. Mr. Justice Bradley said:

"The Nicholson pavement was a complete thing, consisting of a certain combination of elements. The defendants used it as such,—the whole of it. * * * Nicholson's pavement, as before said, was a complete combination in itself, differing from every other pavement. The parts were so correlated to each other, from bottom to top, that it required them all, put together as he put them, to make the complete whole, and to produce the desired result. The foundation impervious to moisture, the blocks arranged in rows, the narrow strips between them for the purposes designated, the filling over those strips, cemented together, as shown by the patent,—all were required. Thus combined and arranged, they made a new thing, like a new chemical compound. It was this thing, and not another, that the people wanted and required. * * * It is not the case of a profit derived from the construction of an old pavement together with a superadded profit derived from adding thereto an improvement made by Nicholson, but of an entire profit derived from the construction of his pavement as an entirety."

So in Hurlbut v. Schillinger, 130 U. S. 456, 9 Sup. Ct. 584, 32 L. Ed. 1011, where the defendant had made gains from laying a pavement in violation of the plaintiff's patented invention, and it appeared that if the pavement had not been laid in that way it would not have been laid at all, it was held that the profit made was a single profit, derived from the construction of the pavement as an entirety, and consequently all of it was awarded to the plaintiff. Equally where the whole commercial or marketable value of infringing mechanism arises from a patented improvement, the owner of the patent is entitled to recover from the infringer the total profits made from the manufacture and sale of such mechanism. In Crosby Valve Co. v. Safety Valve Co., 141 U. S. 441, 454, 12 Sup. Ct. 49, 53 (35 L. Ed. 809), the court said:

"It appearing that the defendant's valve derived its entire value from the use of the Richardson invention covered by the patent of 1866, and that the entire value of the defendant's valve, as a marketable article, was properly and legally attributable to that invention of Richardson, the plaintiff is entitled to recover the entire profit of the manufacture and sale of the valves."

Callaghan v. Myers, 128 U. S. 617, 9 Sup. Ct. 177, 32 L. Ed. 547, though a copyright infringement case, is in principle in line with the foregoing authorities.

[2-6] The complainant contends that the claims in suit cover not only the Bohn partition but the entire car body as a combination. The mere fact that the mechanism embodied in the car body is a combination is not decisive on the point of the divisibility or indivisibility of profits resulting from its manufacture and sale by the defendant. There is no natural or logical connection between the entirety of a patented mechanical combination with respect to infringement, and

the divisibility or indivisibility of the profits realized through its infringement. The combination is an entire and indivisible entity, and in order that infringement may occur the infringing mechanism must contain all of the elements of the combination, as shown or their mechanical equivalents, co-operating or co-acting in substantially the same manner, to produce a result of substantially the same nature. There can be no infringement by the use of any one or more, but not all, of the elements. In this sense the combination is unitary and entire. But the elements entering into such mechanical combination may all be new, or one or more of them old and the rest new, or all of them old. And where the elements of a combination are all old and well-known and the combination is also old and well-known, patentability may be imparted to it by an inventive alteration or improvement of one or more of the elements whereby the utility of the combination is increased. In such case the essence of the invention so far as the one making the improvement or alteration is concerned, and in its bearing upon the division of profits in case of infringement, inheres in and is confined to the element or elements as so altered or improved; although where the case from its nature is not susceptible of an apportionment of profits, or where from failure to keep proper accounts, or other cause, it becomes impossible to establish the amount of profits on the combination attributable to such improvement or alteration, the complainant may be decreed to recover the entire profits from the infringer. If the mere fact of an infringement of a patented combination entitles the patent owner to recover total profits from the infringer, upon the ground that any patented combination is an indivisible entity or entirety, it would afford a strong inducement to a grasping inventor of a small and insignificant improvement to include in his claims, not merely the thing invented by him, but a combination including among its elements that thing in conjunction with sundry old and well-known things, and to claim total profits upon the whole combination. For the purpose of ascertaining the measure of profits or damages recoverable in cases of infringement it is the duty of the court to regard the real nature of the invention of the patentee, as constituting a mere improvement in or addition to an old device, or, on the other hand, in a substantial sense a new and entire combination. Much of the argument on the part of the complainant has been based upon the proposition that the alteration or improvement introduced by Quinn changed the old combination and made the combination of the patent in suit a new and distinct entity. This in a sense is true, but only in the sense in which any improvement in an element of an old combination, which renders it patentable, necessarily converts it into a distinct entity. Referring to the placing in freight refrigerator cars of the Quinn partition with its V-shaped air ducts or passages—although decided in this case to have been meritorious—as the introduction of a "siphonic-system," is calculated to mislead by creating an exaggerated notion of the scope of Quinn's improvement. The construction of the partition of the patent in suit facilitated and promoted the circulation of air throughout the refrigerator with much greater efficiency than did the earlier partitions, and its utility and value as an advance in the art

have been authoritatively recognized and declared in this suit. But notwithstanding what has been said, the gist or essence of Quinn's invention lies in the construction or arrangement of the partition separating the ice bunker from the refrigerating room. There are several things about which on the evidence there can be no serious question. The Quinn invention did not "inhere in" and include an entire refrigerator car body "as an entity," or convert the car body into an entire structure constituting a new article of manufacture, but was "only an improvement in a single element of an otherwise well-known device." Indeed, no mention of a car or car body is made in any part of his patent. The essence of his invention, as appears from the opinion of the circuit court of appeals and the lower court, was a new form of partition between the ice bunker and food chamber promotive of the circulation of air. Quinn states in his patent that by reason of his improvements—

"a continual circulation of air is obtained passing from the refrigerating room through the spaces in the partition into the bunker, and thence through the bottom of the bunker and back into the refrigerating room, cold and dry."

The underlying principle which imparts efficiency to the mechanism is the tendency of cold air to fall and warm air to rise owing to the difference in their specific gravity; the air chilled in the ice bunker descending and passing therefrom into the lower portion of the refrigerating room and thence circulating and rising with its increasing temperature until it enters the ice bunker through the air ducts in the partition and again descending under the influence of the lower temperature, thus maintaining a steady circulation of cold air in the refrigerating room. Precisely the same principle of specific gravity of the air as affected by varying temperature underlies the early forms of mechanism used for causing circulation of the air in refrigerator cars. The form and arrangement of the partition of the patent in suit are improvements on what had gone before and constitute a meritorious advance in the art, but, whether the heated air in going from the refrigerating room into the ice bunker, or the chilled air in going from the ice bunker to the refrigerating room, should pass through horizontal passages, or passages slanting only in one direction, or V-shaped passages, or siphon-shaped passages, or respectively over the top and under the bottom of the partition, involves merely a question of varying methods of varying efficiency and utility in promoting the desired circulation of air on the common underlying principle referred to. The choice of one of those methods rather than another, whether termed a siphonic system or not, could not convert the car body into "an entire structure constituting a new article of manufacture."

[7, 8] The entire value of the refrigerator car body as a salable and marketable article, in conjunction with the running gear, was not in law or in fact attributable to the invention of the patent in suit. It appears that during the accounting period the defendant, in addition to the infringing cars, made and sold many thousand freight refrigerator cars, equipped with plain non-infringing partitions between the ice bunker and food chamber, with an open space at the bottom to permit the cold air to pass from the ice bunker into the food chamber,

and an open space at the top to permit the comparatively warm air to pass from the food chamber into the ice bunker, thus maintaining the circulation of air in the car body, and that whatever difference in efficiency for refrigeration existed between the infringing and non-infringing cars was but slight. And there is evidence given by the assistant general manager of the defendant November 21, 1911, that the defendant was then engaged in filling an order for 2,500 freight refrigerator cars provided, not with the Bohn partition, but with a plain partition or bulkhead. Under these circumstances this case called for an apportionment if practicable of profits as between the complainant and defendant in accordance with the principles of law and equity applicable to the subject. Where mechanism, consisting of a mechanical combination, is old and open to be made, used and sold by the public, and one of its elements is so improved as to confer patentability upon the combination, as a whole, but such improvement, while increasing the efficiency or value of the mechanism over what was before known or used, does not change its function or affect the principle of its operation, the owner of the patent in seeking only to recover profits from an infringer of the combination is limited to the excess of profits realized by him from the manufacture, use or sale of the mechanism, as so improved, over what he might or would have made from the manufacture, use or sale of the old mechanical combination. Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371; Maier v. Brown (C. C.) 17 Fed. 736; Westinghouse v. New York Air Brake Co., 140 Fed. 545, 72 C. C. A. 61; Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653; Brinton v. Paxton, 134 Fed. 78, 67 C. C. A. 204; Star Salt Caster Co. v. Crossman, 4 Ban. & Ard. 566; Baker v. Crane Co., 138 Fed. 60, 70 C. C. A. 486. In Maier v. Brown, supra, the invention found to have been infringed consisted in "covering the frame of the trunk with narrow strips of wood laid in close proximity to each other all around its top and sides." The master allowed the complainant the entire profits made by the defendant in the manufacture and sale of trunks covered by the patent. The court disapproved of the action of the master, saying, through Judge, afterwards Mr. Justice, Brown:

"There is no doubt whatever of the general proposition that the patentee of an improvement is limited in his recovery to such profits as may be properly apportioned to the use of his improvement. He can only recover profits upon the entire article when such article is wholly his own invention, or when its entire value is properly and legally attributable to the patentable feature. * * * The difficulty is in the application of this principle. Thus, if one discovers a new composition of matter, such as gun-cotton, nitro-glycerine, or vulcanized rubber, or invents some new machine, such as the telephone, or some new article of manufacture, such as barbed wire, or a new pavement, he would obviously be entitled to damages arising from the manufacture and sale of the entire article. Upon the other hand, if his invention were limited to some particular part of a large machine, such as the cut-off of an engine, the axle of a wagon, or the seat upon a mowing-machine, it is equally clear that his recovery must be limited to such profits as arise from the manufacture and sale of the patented feature. His damages, too, must be proved, and not left to conjecture; and the fact that it is impossible to separate the profits arising from the improvement from those incident to the manufacture of the whole machine, is an insufficient reason for awarding the plaintiff more than he is entitled to receive. * * * In case he is unable to prove

how much of the entire profit upon the machine is due to his patent, he can recover only nominal damages. * * * The invention is described as a rustic trunk, but in fact it consisted of nothing more than attaching to an ordinary frame strips of wood laid in close proximity to each other, at right angles to the grain of the trunk, thereby increasing its strength, durability and beauty, and diminishing to some extent the cost of its manufacture. Thes slats (for they were all that was claimed as new) composed but a small part of the entire trunk, and took the place only of an ordinary leather covering. There was still the frame, the lock, hinges, catches, lining, trays, boxes, and interior decorations unaffected by the patent. We are bound to infer there was a profit upon the manufacture and sale of these as well as the plaintiff's attachment."

In the leading case of Garretson v. Clark, supra, the court said:

"When a patent is for an improvement, and not for an entirely new machine or contrivance, the patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance. He must separate its results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated. The rule on this head is aptly stated by Mr. Justice Blatchford in the court below. 'The patentee,' he says, 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.' The plaintiff complied with neither part of this rule. He produced no evidence to apportion the profits or damages between the improvement constituting the patented feature and the other features of the mop. His evidence went only to show the cost of the whole mop, and the price at which it was sold. And, of course, it could not be pretended that the entire value of the mop-head was attributable to the feature patented."

To fully appreciate the significance of the language used by the Supreme Court in that case it is necessary to refer to what transpired in the court below. Garretson v. Clark, 15 Blatchf. 70, Fed. Cas. No. 5,248. The report of the master and the decree of that court allowed the complainant only nominal damages and this decree was affirmed. Infringement of two combination claims was found. Judge, afterwards Mr. Justice, Blatchford, among other things, said:

"The master states, and the record shows, that all the evidence offered by the plaintiff, has been with the view of showing the damages to him and the profits to the defendants, in the manufacture of the infringing mop as a whole. * * * The plaintiff has excepted to the master's report. The exceptions insist that the actual damages to the plaintiff, for the mops made and sold by the defendants in infringement, which the plaintiff would have made and sold but for the infringing manufacture and sale by the defendants, are the difference between what the manufacture and sale of such mops would have cost the plaintiff, and the amount for which the plaintiff would have sold such mops; and that the amount of the profits made and received by the defendants, by reason of the infringement adjudged, is the difference between what the manufacture and sale of the infringing mops made and sold by the defendants cost the defendants, and the amount for which the defendants sold said infringing mops. * * * It is a weak point in the argument for the plaintiff, that it assumes, without sufficient evidence, that the market for the plaintiff's mop was made solely by the fact that the mop contained the improvements patented by the plaintiff's patents. This would not follow, even from the fact that the mop, with such improvements, had driven other mops out of the market. Energy, diligence, business tact, supe-

rior facilities and skill, and fortuitous circumstances, contribute largely to the success in the market of even an article which has all the superiority in its line, that is claimed for tne plaintiff's mop. * * * The argument on the part of the plaintiff leads to the conclusion, that, when an article or a machine, with a given patented improvement embodied in it, has a controlling preference in the market, over the article or machine which does not embody such improvement, it must be conclusively inferred that such preference is due to the improvement; and that the patentee, in case of infringement, is entitled to the profits made by the infringer from the manufacture and sale of the whole article or machine, and is entitled, as damages, to the profits he would have made on the manufacture and sale of an equal number of entire articles or machines made and sold by the infringer. This would often cause a small improvement on a costly machine to draw to itself very large profits, entirely out of proportion to the relation existing between the improvement and the rest of the machine, and, in cases where the unpatented parts of the machine were quite as indispensable to the machine as the patented improvements, and even more indispensable, the profit on the entire machine would virtually become the license fee for the use of the patented improvement. In the case of a machine embodying several patented improvements, in infringement of several patents belonging to several different persons, each patentee would claim that it was his particular patented improvement which caused the machine to dominate the market, and each would claim the profits of the manufacture and sale of the entire machine, and damages based on the same principle."

In Westinghouse v. New York Air Brake Co., supra, it was held that the burden of proving apportionment of profits for infringement of a patent for a device which constitutes only one feature of the machine or structure sold by the defendant rests on the complainant. This case follows Garretson v. Clark, supra. Only nominal profits were allowed. Among other things, the court said:

"The cases are exceedingly rare in which the whole marketable value of a machine, or of a collection of devices, can in reason be attributable to a patented feature which embraces merely an improvement in one of its parts. Marketable value is ordinarily the result of various conditions independent of the normal value of the machine itself, and the contribution which the patented part gives to marketable value is necessarily dependent more or less upon these conditions. Enterprise, exploitation, and business methods in introducing and marketing the thing are generally as important a factor in its intrinsic value."

In Westinghouse Co. v. Wagner Mfg. Co., supra, the court after referring to certain classes of cases in which the total profits should be recovered from the infringer, say:

"But there are many cases in which the plaintiff's patent is only a part of the machine and creates only a part of the profits. His invention may have been used in combination with valuable improvements made, or other patents appropriated by the infringer, and each may have jointly, but unequally, contributed to the profits. In such case, if plaintiff's patent only created a part of the profits, he is only entitled to recover that part of the net gains. He must, therefore, 'give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.' Garretson v. Clark, 111 U. S. 120 [4 Sup. Ct. 291, 28 L. Ed. 371]."

212 F.— 48.

[9] Westinghouse Co. v. Wagner Mfg. Co. has established an important modification of the doctrine of the earlier cases touching the burden resting on a complainant to apportion profits realized through infringement. But it is believed that case fully supports the following propositions. Where the essential nature of a case in which infringement has occurred precludes an apportionment of profits, the complainant, having shown profits, is entitled to recover all of them from the infringer as a trustee ex maleficio. But where the nature of the case does not per se exclude the possibility of a just apportionment, and whatever difficulty exists grows out of special circumstances, a complainant can recover the entire profits only after showing that the infringer has realized profits, and making every reasonable effort, though unsuccessfully, to apportion the amount attributable to the patented invention. A complainant "who has exhausted all available means of apportionment, who has resorted to the books and employés of the defendant, and by them, or expert testimony, proved that it was impossible to make a separation of the profits," may entitle himself to the total profits from the infringement, but the burden of proof is not shifted from the plaintiff to the defendant "until after the plaintiff has proved the existence of profits attributable to his invention and demonstrated that they are impossible of accurate or approximate apportionment." Some stress was laid by the counsel for the complainant on Maimin v. Union Special Mach. Co., 187 Fed. 123, 109 C. C. A. 41, decided by the circuit court of appeals for the third circuit. That case, however, is clearly distinguishable from this and does not control the decision here. Elements of fraud and unfair competition largely entered into it and in other respects it differed in principle from the present case. The court said:

"This state of facts is unique, and complainant's equities must be determined with reference thereto. It is not necessary to dwell upon the moral delinquency involved by the purchase of old, second-hand machines, some with and some without the device characterizing the patent in suit, taking them apart, sending the parts to japanners to be rejapanned or renickled, reassembling the parts so as to change the machine from one gauge to another, and from one class to another, taking brass medallions from other machines broken too badly for repair and placing them upon the machines thus made up, renumbering them, in the effort to make them correspond with complainant's regular class numbers for that particular type of machine, so that they would look like new machines, and selling them specifically as complainant's own machines and under complainant's name. It is only necessary to observe that these are findings of fact unassailed by any assignments of error, and being facts, they render the infringement by the defendant, as found by the master, one of a peculiarly aggravated character."

Maimin v. Union Special Mach. Co. presents the case of an infringer clearly within the category of those referred to in Westinghouse Co. v. Wagner Mfg. Co., "who had concealed or destroyed evidence or been guilty of gross wrong." Further, the utility of a patented improvement and its value do not of themselves establish as against an infringer the derivation by him of profits from its infringement. In Westinghouse Co. v. Wagner Mfg. Co., supra, the court said:

"The plaintiff proved its patent, and that it had been infringed by the defendant in the manufacture of several thousand transformers which sold

for $955,000. The patent was itself evidence of the utility of claim 4, and the defendant was estopped from denying that it was of value. Lehnbeutei v. Holthaus, 105 U. S. 94 [26 L. Ed. 939]. But no 'matter how great its presumptive or actual value, it did not follow that the defendant had made a profit by the sale of the infringing transformers. And so, having sued· for profits, the Westinghouse company was under the burden of showing they had been made."

[10] It was necessary that the complainant in this case, in order to obtain a decree for more than a merely nominal amount, should prove that profits were made by the defendant from the manufacture and sale of the 16,032 freight refrigerator cars, by reason of the Bohn partition, in excess of such profits as might and probably would have been made by the defendant from the manufacture and sale of the same number of cars similar save for the use of a plain partition open to the public instead of the Bohn partition. It was further necessary that the complainant should prove or make all reasonable efforts to prove the amount of such excess of profits, if any, in order to ascertain the share of profits attributable to the patented· improvement, and reach a proper basis for an apportionment. But the complainant did neither. No such apportionment or attempt at apportionment was made. On the contrary, the master assumed a position in accordance with the contention of counsel for the complainant that was fatal to the making of any logical or proper apportionment. On the unwarranted assumption, as it seems to me, that, from the mere fact that the defendant made and sold the 16,032 freight refrigerator cars under specifications requiring the Bohn partition, the complainant was entitled to recover the total profits on the entire car or car body, he discarded all idea of a legitimate apportionment of profits between the parties, stating—what might well be a corollary from that assumption—that:

"The equitable principle invoked, upon which defendants, who have mingled wrongful profits with rightful ones inextricably, are liable for the whole, does not, it is found, come into the present case."

Not only did this case require an apportionment if practicable, but the burden of showing the amount of profits realized attributable to the Bohn partition rested primarily on the complainant. The complainant failed to sustain the burden of proof, or of reasonable effort to apportion required of him by the law. At the commencement of the taking of evidence on the accounting April 11, 1910, the counsel for the complainant moved that the defendant·be directed and required by the master to file a verified statement showing, among other things, the following particulars relating to infringing freight refrigerator cars manufactured and sold by the defendant during the accounting period:

"5. The price per car received on each sale. 6. The total cost per car on each sale, including a separate statement of. each item going to make up such cost. 7. The profit per car made by the defendant on each sale. 8. The cost of the superstructure per car to the defendant on each sale. 9. The profit per car made by the defendant on the superstructure of the cars on each sale. 10. The cost to the defendant per car of the trucks, bolsters, brakes, etc., apart from the superstructure on each sale. 11. The profit made by the defendant on the trucks, bolsters, etc., and apart from the superstructure on each sale."

The term "superstructure" was defined in the motion as "the containing part of the said cars, including the outside case or walls as distinguished from the running equipment, consisting of the trucks, bolsters, brakes, etc." Thus the complainant, though applying for a statement showing the price received per car, its total cost and each item going to make up such cost, the profit on the entire car, the cost of and profit on the body of the car, and the cost of and profit on the running-gear, did not in terms or in substance ask whether any profit was made by the defendant by reason of and attributable to the use of the Bohn partition, or what was the amount of the profit so made and attributable, and whether, and to what extent, such profit was in excess of that which might and probably would have been made by the defendant if using a plain partition. The above mentioned application of the complainant elicited from the defendant a statement to the effect, aside from other things unnecessary to consider in this connection, that it had during the accounting period manufactured and sold 16,032 infringing freight refrigerator cars, besides a number of others excluded from the accounting; that excluding devices furnished by the railroad companies the average cost to the defendant of the 16,032 freight refrigerator cars was approximately $914.38 per car, and their average selling price $1,086.12 per car; and that it might be assumed for the purpose of the accounting that—

"of the total average cost of the refrigerator freight cars, namely, $914.38, the cost of the 'car body' and its internal equipment (said 'car body' including beams of the floor known as 'sills' in a wooden car and as 'nailing strips' in a steel car, but excluding trucks, body bolster, brake mechanism, couplers, draft rigging, etc., and the parts below said sills and nailing strips), was, approximately, $470.90."

In this statement there is absolutely nothing to show or calculated, directly or indirectly, to show, or furnish a basis for showing either the existence or amount of any profit to the defendant attributable to the use of the Bohn partition. As before stated in effect, the fact that the Quinn partition is the essence of the invention of the patent in suit does not prove that the defendant made a profit—much less its amount—through the infringement of its claims. Westinghouse Co. v. Wagner Mfg. Co., supra. The master did not find the Bohn or Quinn partition indispensable to the salability of freight refrigerator cars, not manufactured under a stipulation that it should be used. There is no evidence that the amount of profits attributable to the use of the Bohn partition, if any existed, could not have been shown by the complainant. Evidence that such partition cost more than older forms of partition cannot of itself show profits on the manufacture and sale of the car or car body. The complainant did not show or attempt to show what, other things being equal, was the difference, if any, between the profits from the manufacture and sale of freight refrigerator cars containing the Bohn or Quinn partition and the profits from freight refrigerator cars provided with the older partitions not containing the V-shaped ports. The White Enamel Refrigerator Company made the Bohn partition, the use of which in the freight refrigerator cars manufactured and sold by the defendant involved the latter in infringement

of the combination of the patent in suit. It was probable that the officers and employés of the White Enamel Refrigerator Company, if any one, had some knowledge, actual or expert, of the profits on such cars or car bodies derivable from the use of the Bohn partition. Under the doctrine recognized by the Supreme Court the complainant would not have been held down to absolute accuracy or the strictest proof in establishing the existence of profits and the amount thereof, approximate or exact, as against an infringer. It might not only have resorted to the books and employés of the defendant, or to expert testimony, but also have examined the officers and employés of the White Enamel Refrigerator Company and of the railroad companies making use of the infringing combination in order to show, exactly or approximately, the profits attributable to the Bohn partition. But the complainant did none of these things. It made no serious effort to prove profits attributable to the Bohn partition, or to establish their amount and proper apportionment. It failed to comply with a condition precedent to its right to recover more than a merely nominal sum for the infringement. It does not occupy the position of one "who has exhausted all available means of apportionment, who has resorted to the books and employés of the defendant, and by them, or expert testimony, proved that it was impossible to make a separation of the profits" and "has proved the existence of profits attributable to his invention, and demonstrated that they are impossible of accurate or approximate apportionment." Westinghouse Co. v. Wagner Mfg. Co., supra. What the master did was this: Taking the cost of the whole car, the cost of the car body, and the profits on the whole car, he arbitrarily applied the rule of three, reaching the result that the profit on each car body was $88.44, and, the complainant having offered to deduct from such profit $47.09, or 10 per cent. of the cost of the car body "for manufacturer's profits" allowed the remaining $41.35 as profits recoverable on each car body, aggregating $662,923.20, the amount awarded to the complainant. This was a purely "conjectural or speculative" and, as such, inadmissible finding of profits. Even were it assumed that such a method of computation could legitimately be resorted to under any circumstances in the case of infringement of mechanical devices or combinations it could be only after proper effort by a complainant to establish a just and approximately accurate apportionment.

I have reached the conclusion that the fifty-sixth exception of the defendant to the master's report, based upon his failure to find that the complainant was entitled to recover of the defendant only a nominal sum on the accounting, must be sustained and the report set aside. It is needless to refer to any of the other exceptions.

In view of this conclusion it is unnecessary to consider the Ames patent No. 625,309. The complainant is entitled to recover from the defendant the nominal sum of six cents, together with its costs of this suit, excepting such as are involved in the accounting, and the defendant is entitled to recover from the complainant its costs involved in such accounting. Garretson v. Clark, 15 Blatchf. 70, Fed. Cas. No. 5,248; Dobson v. Hartford Carpet Co., 114 U. S. 439, 5 Sup. Ct. 945,

29 L. Ed. 177; Dobson v. Dornan, 118 U. S. 10, 6 Sup. Ct. 946, 30 L. Ed. 63. Let a decree in accordance with the views expressed in this opinion be prepared and submitted.